**In the Matter of ALL SEASONS INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 89–11657.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

June 5, 1990.

David C. Peebles, Fort Wayne, Ind., Michael E. Boonstra, Logansport, Ind., Daniel J. Skekloff, J. Frank Kimbrough, Fort Wayne, Ind., for debtor.

Howard B. Sandler, Steven J. Ouellette, Fort Wayne, Ind., for unsecured creditors' committee.

Edmund Kos, Grant F. Shipley, Fort Wayne, Ind., for Summit Bank.

Jeffry G. Price, Peru, Ind., for Peru Trust Co.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court to consider debtor's motion for an extension of the exclusive time that it has to file a proposed Chapter 11 plan, pursuant to 11 U.S.C. § 1121. Although the motion has the support of the unsecured creditors committee, two secured creditors, Summit Bank and Peru Trust Company, object.

Section 1121 of the Bankruptcy Code gives the debtor the exclusive right to file a plan during the first 120 days after the order for relief. 11 U.S.C. § 1121(b). This 120 day period may be increased or

reduced "for cause." 11 U.S.C. 1121(d). The party seeking a change in this statutory time period bears the burden of proving that the requisite cause exists. *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y.1987); *In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. 206, 207 (Bankr.D.Mass.1983). Whether or not it has done so is a question committed to the sound discretion of the bankruptcy judge. *In re Tony Downs Foods Co.*, 34 B.R. 405, 406 (Bankr.D.Minn.1983); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y.1989).

■ In passing upon a request for a change in the debtor's exclusivity period, the court needs to consider more than just the articulated cause presented to it. It must also consider the history and purpose of § 1121 and the competing interests which Congress sought to balance when it enacted these time tables.

> The limited exclusivity period, which is a feature of Chapter 11 proceedings under the Bankruptcy Code contrasts with the procedure under Chapter XI of the Bankruptcy Act which gave the debtor the exclusive right, throughout the Chapter XI proceedings, to propose a plan. The House Report accompanying H.R. 8200 noted that '[t]he exclusive right [under old Chapter XI] gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors'.... Additionally, Sec. 1121 represents a congressional acknowledgement that creditors, whose money is invested in the enterprise no less than the debtor's, have a right to a say in the future of the enterprise ... [W]e think that any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind Sec. 1121. The bankruptcy court must avoid reinstituting the imbalance between the debtor and its creditors that characterized proceedings under the old Chapter XI. Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors. *In re Washington–*

*St. Tammany Electric Co-op, Inc.*, 97 B.R. 852 (Bankr.E.D.La.1989) (quoting *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir.1987) (en banc) (aff'd 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)) (citations omitted). *See also Matter of Lake in the Woods*, 10 B.R. 338, 343–45 (D.E.D. Mich.1981); *In re Southwest Oil Company of Jourdanton, Inc.*, 84 B.R. 448, 450 (Bankr.W.D.Tex.1987).

As a result, a request to either extend or reduce the period of exclusivity is a serious matter. Such a motion should "be granted neither routinely nor cavalierly." *McLean Industries, Inc.*, 87 B.R. at 834.

■ The debtor advances three primary arguments in support of its motion for an extension. The first involves pending litigation, before the District Court, in which debtor seeks to recover substantial sums from Ashland Chemical. This matter was originally scheduled to be tried to a jury in April of 1990 but has recently been continued to July of this year. Debtor contends that the successful prosecution of the litigation will have a substantial impact upon the course and, perhaps, the need for this reorganization and that a proper plan cannot be formulated without knowing the outcome. Debtor's second reason involves the seasonality of its business building boats. Debtor believes that the additional time requested will allow it to generate a more accurate, and perhaps more favorable, prediction of its business operations. Debtor's third reason is premised upon the substantial amount of litigation that it has had to undertake, particularly with Summit Bank, during the early stages of this reorganization. This litigation supposedly has been of sufficient volume and consequence that it has distracted the debtor in possession from the primary goal of this proceeding—the formulation, proposal, and confirmation of a plan of reorganization.

Having considered the debtor's arguments for an extension of the period of exclusivity, the court finds that, when these arguments are considered against the background of the Congressional policy behind § 1121 and the other aspects of this

case, cause does not exist for an extension of time.

■ In reaching this conclusion the court notes that its decision does not sound a death knell for debtor's reorganization. "Denying such a motion only affords creditors their right to file the plan; there is no negative effect upon the debtor's co-existing right to file its plan." *Parker Street,* 31 B.R. at 207. The debtor remains free to take as long as it wishes or feels appropriate to develop and propose its own plan. "The risk is, of course, that while it is developing its plan, another party in interest will file a plan. However, that is as Congress intended." *Tony Downs,* 34 B.R. at 408. *See also Southwest Oil Co.,* 84 B.R. at 455. Even if, as appears likely in this case, another party would file a plan, that plan will be subject to the same procedures and standards governing confirmation that would apply to any plan debtor might wish to propose. "[T]he debtors and other creditors can object to confirmation on any number of grounds. Filing such a plan does not guarantee confirmation." *Southwest Oil Co.,* 84 B.R. at 454.

The need to conclude the District Court litigation does not appear to be critical to the debtor's efforts to propose a plan. The debtor should be able to "propose its plan taking into consideration the possible results of that action." *Parker Street,* 31 B.R. at 208. Conversely, if a resolution of that litigation is crucial to any plan, no one, neither debtor nor creditor, will be able to propose such a plan until the verdict comes in. *Id.* While the court can understand that it might be more convenient to know the results of the litigation, it does not seem that this Chapter 11 proceeding must be placed in limbo until that time.

Beyond the convenience that would flow from a judgment, one way or the other, in the District Court litigation, there is another consideration which must also be weighed in the balance. The court does not feel that the entry of judgment on the jury's verdict will end that litigation. The dollars involved are substantial. As a result, it would seem that regardless of the jury's decision, the result could, in all likelihood, be appealed creating additional delays and continuing any uncertainty.

Shortly after this case was filed the debtor made bright predictions about its future, which were shared with the court at a trial on debtor's motion for use of cash collateral. Although that motion was granted, these predictions do not appear to have been fulfilled, at least not as completely as debtor had hoped. The second major premise for the requested extension appears to be the debtor's belief that additional time will provide the opportunity for these predictions to yet come true. Consequently, if given more time, the debtor believes it will be able to present better financial information to its creditors in connection with a plan and disclosure statement. "Better" in this sense means not only more accurate but also more profitable. In other words the debtor hopes that during an extended period of exclusivity its financial situation will improve.

While the court can and does appreciate the need to present creditors with accurate and reliable information concerning a debtor's historical and projected operations, the court does not feel that the basis for debtor's request rises to the level of cause required by § 1121. Debtor has been operating under the protection of Chapter 11 since November of 1989 and over these months should have developed an accurate record of its income and expenses. The fact that its post-petition track record may not be as successful as it would like should not be used to justify an extension of the exclusivity period, based upon the hope that additional time will allow the debtor's financial fortunes to improve.

Debtor's post-petition litigation in this court does not weigh heavily in favor of extending the period of exclusivity. Indeed, "[t]he ordinary Chapter 11 debtor is expected to bring with it litigation, or the potential for it." *Southwest Oil Co.,* 84 B.R. at 452. Litigation with creditors is not unusual. In this particular instance, debtor's post-petition litigation has been nothing "more than predictable creditor litigation, symptomatic of any business difficulty in its advanced stages." *Id.* at 453. It is not the type of litigation which justifies extending the period of exclusivity.

In enacting § 1121(d), Congress contemplated that one of the most common causes

for an extension of the exclusivity period would be the size and complexity of the case. *See McLean*, 87 B.R. at 834 (citing *In re Perkins*, 71 B.R. 294, 297–99 (W.D. Tenn.1987); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr.D.D.C.1986)). This case is neither large nor unique. There is nothing unusual about the nature of the debtor's business or the financial problems which resulted in the need to seek relief under Chapter 11. The number of creditors that debtor brought with it to this court and the claims they have against the debtor and its assets are not particularly extraordinary. Consequently, the size, nature, and complexity of the case do not seem to call for an extension of time.

One of the most important reasons for extending the debtor's period of exclusivity is to give the Chapter 11 process of negotiation and compromise an opportunity to be fulfilled, so that a consensual plan can be proposed and confirmed without opposition. *See Southwest Oil Co.*, 84 B.R. at 452. In this instance, it does not appear that the objecting creditors are "recalcitrant" or refuse to discuss the possibilities of reorganization with the debtor in good faith. *See Gibson*, 101 B.R. at 409; *Washington–St. Tammany*, 97 B.R. at 854. Instead, it appears that the debtor and its primary opponents have a good faith difference of opinion about the future prospects of debtor's business. As a result, it does not seem that they have been able to find or will be able to find a common ground upon which to structure a mutually satisfactory plan. Further, it does not seem that an extension of the period of exclusivity will change this state of affairs. Rather, it would seem that such an extension would have the result of continuing to hold creditors hostage to the Chapter 11 process and pressuring them into accepting a plan they believe to be unsatisfactory. *See Tony Downs*, 34 B.R. at 406; *Southwest Oil*, 84 B.R. at 450. While the court does not believe that debtor filed its motion with this purpose in mind, it does appear that this will be or may be one of the unintended consequences of granting the request.

One of the reasons that the debtor and its major secured creditors have not been able to find common ground upon which to build a plan of reorganization is that these creditors have lost faith in the capability and perhaps the integrity of debtor's management. In extreme cases, such a loss of faith may constitute cause for the appointment of a trustee. *See In re Cardinal Industries, Inc.*, 109 B.R. 755, 765–66 (Bankr.S.D.Ohio 1990). While the court makes no finding as to whether or not this loss of faith is justified (indeed the nature of the hearing and the evidence presented do not permit the court to determine this question) for the purposes of the present motion, it is only necessary to realize that a loss of confidence exists. This is a factor the court should and must consider in its determination.

Having considered debtor's motion and the support it has received from the unsecured creditors committee and having carefully balanced all of counsels' arguments, both in favor of and against the motion, in light of the Congressional purpose behind § 1121, the court is persuaded that debtor's motion for an extension of the exclusive time within which it may file a Chapter 11 plan should be denied. An order doing so will be entered.