**In re GERIATRICS NURSING HOME, INC., North Jersey Nursing and Convalescent Center, Inc., Debtors.**

**GERIATRICS NURSING HOME, INC., et al.**

**v.**

**FIRST FIDELITY BANK, N.A.**

**Civ. A. No. 95–2418 (NHP).**

United States District Court,
D. New Jersey.

Sept. 14, 1995.

If this Court were to decide this issue, it is unlikely to find evidence of bad faith.

Richard D. Trenk, Sharon L. Levine, Paul Rosenblatt, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, NJ, for debtors/appellants.

Joseph Lubertazzi, Jr., Sheila E. Calello, McCarter & English, Newark, NJ, for appellee First Fidelity Bank, N.A.

Jay L. Lubetkin, Ravin, Greenberg & Marks, Roseland, NJ, for Official Unsecured Creditors' Committee.

William S. Katchen, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for David L. Gross.

## OPINION

POLITAN, District Judge.

This matter comes before the Court on appellants' appeal from a Bankruptcy Court Order dated April 4, 1995 and a subsequent denial of appellants' motion for reconsideration dated April 18, 1995. Also before the Court is the appellee's motion to supplement the record on appeal to include three Chapter 11 plans of reorganization not before the Bankruptcy Court at the time the subject determinations were made. The Court has heard the arguments of the parties as to the appeal and the motion to supplement the record, and has considered the parties' submissions on both issues; and shall now deny the appellee's motion to supplement the record on appeal; affirm the Bankruptcy Judge's denial of the appellants' motion before her to extend their Chapter 11 exclusivity period; and reverse the Bankruptcy Judge's termination of the appellants' exclusivity period under 11 U.S.C. § 1121(d) as an abuse of discretion.

This appeal arises from the consolidated voluntary Chapter 11 filings of Geriatrics Nursing Home, Inc. ("Geriatrics") and North Jersey Nursing and Convalescent Center, Inc. ("North Jersey") (collectively "the Debtors"). North Jersey is a long-term care facility or nursing home which operates at 296 Hamburg Turnpike, Wayne, New Jersey, a property owned by Geriatrics.

In or about 1987, Geriatrics borrowed certain monies from the Howard Savings Bank ("Howard"). Subsequent to Howard's insolvency and receivership by the FDIC, First Fidelity Bank, N.A. ("First Fidelity" or "appellee") succeeded to Howard's rights. For reasons not relevant to the instant determination, North Jersey later began experiencing difficulty in meeting its monthly mortgage payments and was refused an adjustment in its payment schedule by First Fidelity. Levies upon North Jersey's bank accounts exacerbated the matter, and on November 3, 1994, both North Jersey and Geriatrics filed separate voluntary Chapter 11 petitions in the Bankruptcy Court for the District of New Jersey. On November 15, 1994, the matters were consolidated.

On January 31, 1995, the Debtors filed a joint Disclosure Statement and Plan of Reorganization. Subsequently, on March 16, 1995, the Debtors filed a motion to extend their Chapter 11 exclusivity period pursuant to 11 U.S.C. § 1121(d) ("the Motion"), in order that they might continue to solicit acceptance of their Plan of Reorganization. First Fidelity filed a cross-motion seeking to terminate the period of exclusivity pursuant to 11 U.S.C. § 1121(d) ("the Cross-motion"), in order to permit the filing of alternative plans. On March 20, 1995, the Debtors filed their First Amended Disclosure Statement and First Amended Plan of Reorganization.

A hearing on the proposed amendments to the Debtors' Plan of Reorganization and Disclosure Statement, as well as on the Motion and the Cross-motion, was held in the Bankruptcy Court on April 4, 1995. The amendments were approved by the Bankruptcy Judge in an oral decision, but the Debtors' request for an extension of the exclusivity period was denied and First Fidelity's motion to terminate exclusivity was granted. The Debtors sought reconsideration on the issue of the exclusivity period and, at a hearing on April 18, 1995, the Bankruptcy Judge denied their motion. The Debtors timely appealed the matter to this Court.

### Jurisdiction

█ The Court is satisfied that it is, in its discretion, vested with jurisdiction to decide the appeal of this interlocutory determination by the Bankruptcy Court. 28 U.S.C. § 158(a). *See generally Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 36 (3d Cir.1993); *In re White Beauty View, Inc.*, 841 F.2d 524, 527 (3d Cir.1988).

### Issues on Appeal

The issue on appeal is whether the Bankruptcy Judge abused her discretion in refusing to extend, and instead deciding to terminate, the exclusivity period in which the Debtors alone could file and solicit support for their Plan of Reorganization pursuant to 11 U.S.C. § 1121(b) and (c).

### Motion to Supplement the Record on Appeal

█ The appellee seeks permission to supplement the record on appeal, specifically to

include proposed plans of reorganization filed in the Bankruptcy Court after the April 4, 1995 decision to terminate the period of exclusivity in this case. Those plans were not in the record in the bankruptcy case when the determinations under appeal were made. Having reviewed the submissions in support of and in opposition to the motion, the Court is not convinced that supplementing the record will assist it in deciding this appeal. Therefore, the Court shall deny the appellee's motion to supplement the record on appeal.

**Standard of Review**

■ The standard of review to be employed on an appeal from the Bankruptcy Court is narrow in scope: "an order altering the exclusivity period will not be set aside absent an abuse of discretion." *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y.1989) (citation omitted). Abuse of discretion can be found when a "judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 257 (3d Cir.1995) (citing *Electro–Wire Prods., Inc. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 359 (11th Cir.1994)). *See also N.L.R.B. v. Frazier*, 966 F.2d 812, 815 (3d Cir.1992) (quoting *Int'l Union v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir.1987) ("An abuse of discretion arises when 'the [lower] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'")); *Natural Resources Defense Council v. Texaco*, 906 F.2d 934, 937 (3d Cir.1990); *FGH Realty Credit v. Newark Airport/Hotel Ltd.*, 155 B.R. 93, 97 (D.N.J.1993).

■ To the extent that the Bankruptcy Judge rested her conclusion as to the issue of terminating the exclusivity period on legal issues, the Court shall engage in plenary review of that determination. As to any factual conclusions which led the Bankruptcy Court to conclude as it did, this Court will give them great deference unless such factual determinations were clearly erroneous.

Where the Bankruptcy Court's decision was based upon mixed issues of fact and law, this Court shall apply the appropriate standard to each component as it contributed to the decision below. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1223 (3d Cir.1989); *FGH Realty, supra*, 155 B.R. at 97 (citations omitted).

**Discussion**

■ Section 1121 of Title 11 of the United States Code provides, in pertinent part:

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—

(1) a trustee has been appointed under this chapter;

(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

(d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section.

11 U.S.C. §§ 1121(b), (c), and (d).

The legislative history of 11 U.S.C. § 1121, and its provision for an exclusivity period, bespeak a Congressional intent to facilitate the rehabilitation of debtors in Chapter 11. The exclusivity period affords the debtor the opportunity to negotiate the settlement of its debts by proposing and soliciting support for its plan of reorganization without interference—in the form of competing plans—from its creditors or others in interest. In crafting this legislation, Congress succeeded in

balancing two competing interests: the interest of the debtor in the survival of its business (thus its resort to Chapter 11), and the interest of the creditors in avoiding undue delay in the satisfaction of the debtor's obligations. H.R.Rep. No. 595, 95th Cong., 2d Sess. 231–232 (1978), reprinted in 1978 U.S.C.C.A.N. 5787. *See, e.g., Matter of Newark Airport/Hotel Ltd. Partnership,* 156 B.R. 444, 451 (Bankr.D.N.J.), *aff'd,* 155 B.R. 93 (D.N.J.1993).

■ The language of section 1121 of the Bankruptcy Code provides that the Bankruptcy Judge "may" extend or terminate the exclusivity period for cause. 11 U.S.C. § 1121(d). The section thus grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of "cause." *See In re Kerns,* 111 B.R. 777, 781 n. 2 (S.D.Ind.1990); *In re Sharon Steel Corp.,* 78 B.R. 762, 763 (Bankr.W.D.Pa.1987). In regard to the Bankruptcy Court's termination of the exclusivity period, therefore, this Court must consider whether sufficient "cause" was shown to authorize such action.

■ A party in interest which seeks to establish "cause" to terminate the exclusivity period "bears a heavy burden." *Matter of Interco, Inc.,* 137 B.R. 999, 1000 (Bankr.E.D.Mo.1992) (citing *In re Texaco, Inc.,* 81 B.R. 806, 812 (Bankr.S.D.N.Y.1988)). How a movant can meet that burden, however, is an area left unchartered by Congress and only sporadically explored by the courts.[1] A Bankruptcy Judge from New York has attempted to define the parameters of "cause" by reference to those instances where cause for termination of exclusivity periods was discussed:

> Section 1121(d) of the Bankruptcy Code does not define precisely what factors should be established to constitute "cause" for an extension or a reduction of the exclusivity periods afforded a debtor with respect to formulating and filing a plan of

reorganization. This court previously pointed out in *In re Texaco, Inc.,* 76 B.R. 322 (Bankr.S.D.N.Y.1987) that in those cases where the exclusivity periods were reduced, factors such as gross mismanagement of the debtor's operations, as in *In re Crescent Beach Inn, Inc.,* 22 B.R. 155 (Bankr.D.Me.1982), or acrimonious feuding between the debtor's principals, as in *Texas Extrusion Corp. v. Palmer, Palmer & Coffee (In re Texas Extrusion Corp.),* 68 B.R. 712, 725 (N.D.Tex.1986), were major obstacles to a successful reorganization and were regarded as "cause" for the reduction of the exclusivity periods. Similarly, the legislative history accompanying 11 U.S.C. § 1121 indicates that the plan exclusivity provisions should not be employed as a tactical device to put pressure on parties to yield to a plan they consider unsatisfactory.

*In re Texaco, Inc.,* 81 B.R. 806, 812 (Bankr. S.D.N.Y.1988) (finding that the parties attacking the exclusivity period had "not sustained their burden of establishing cause within the meaning of 11 U.S.C. § 1121(d) for modifying or terminating [the debtor's] exclusive right to proceed with its plan of reorganization"). The above discussion was quoted in *In re Eagle–Picher Industries, Inc.,* 176 B.R. 143, 147 (Bankr.S.D.Ohio 1994), wherein the court acknowledged that delay by the debtor might sustain a motion to terminate or modify the debtor's exclusivity period. Moreover, the *Eagle–Picher* court held:

> Where the only grounds suggested by a movant for termination of the exclusivity period in order that it may file an alternative plan, are, first, that it has been treated unfairly because it has been excluded from negotiations being conducted under the aegis of a mediator, and, second, that the filing of a competing plan will expedite the prompt resolution of these bankruptcy cases, this court is unable to find the cause required by § 1121(d).

---

1. The parties did not cite, nor has the Court's independent research uncovered, any case law from the Third Circuit or from this District addressing the issue of "cause" as used in 11 U.S.C. § 1121(d). Therefore the Court has looked beyond the Circuit for decisions which

discuss "cause" in that context. While the Court is not bound by such decisions—predominantly from Bankruptcy Courts—it shall utilize their reasoning to the extent that they assist the Court in deciding the instant appeal.

*Id. See also In re Kun,* 15 B.R. 852, 852–53 (Bankr.D.Ariz.1981) (acknowledging, in *dicta,* that "the degree of creditor resistance" to the debtor's plan ought to be considered in deciding a motion to reduce the exclusivity period).

Based on the clear language of, and the legislative intent underlying section 1121(d) of the Code, the Court is satisfied that the aforementioned discussions of "cause" are accurate, and the Court utilize them in this appeal.

In the instant case, the Debtors were still within their exclusivity period and had presented a plan of restructuring when the determination under appeal was made by the Bankruptcy Court. The record reflects that, as of April 4, 1995, the Debtors were in the process of negotiating with their creditors and soliciting support for their plan, which provided for 100% payment of all creditors' claims, albeit over a period of time.[2] First Fidelity and another party in interest both submitted to the Bankruptcy Court at the April 4, 1995 hearing that they were each prepared to tender more favorable plans of reorganization. The Bankruptcy Judge determined that these alternative plans ought to be entertained and, finding that the Debtors had had ample opportunity to solicit support for their proposed plan, ordered that the exclusivity period be terminated so as to permit the filing of competing plans by the creditors and parties in interest. *See* Appellants' Record on Appeal 43, at pp. 66–69.

At the April 4, 1995 hearing, the Bankruptcy Judge set forth her reasons for terminating the exclusivity period and allowing the filing of alternative plans. The court found that Congress intended to balance the interests of debtors and creditors in Chapter 11, and that maximum return on creditors' claims coupled with the continued survival and viability of the debtor are the goals of the Code in this area. However, the court expressed favor for the interests of the creditors: "[T]o some extent, creditors' rights are paramount, not the only interest, but first among equals in some sense." *Id.* at pp. 66–67 (*see also* page 69 at lines 20–22). Based on that view of the process, the court found that the traditional inclination of bankruptcy judges to extend the period of exclusivity was at odds with Congressional intent. The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business. In regard to the instant Debtors, the court found that they "had that opportunity here." *Id.* at p. 68. The Bankruptcy Judge recognized that the Debtors' plan "made its unsecured creditors happy[,]" but that "one of the main creditor constituencies [was] not particularly happy with its treatment under the plan[.]" *Id.*

Permitting the filing of alternative plans would, in the Bankruptcy Court's view, lead to "the best of all possible worlds." The judge, in essence, found that the existence of alternative plans would create a discourse among the various parties in interest which would weed out unfavorable plans and lead to the best possible result for all concerned. *Id.* at 69.[3] The court stated:

> I have no intention and no desire to hold this reorganization process up. On the other hand, I do have every intention that all creditor constituencies get the best possible deal.... I am somewhat perplexed how could I get the confirmation in this case and make a best good faith result determination without having considered whether competing plans are viable or not.

*Id.* At the hearing on the Debtors' motion for reconsideration, the Bankruptcy Judge restated her view that the potential for alternative—more favorable—plans constituted sufficient cause to terminate the Debtors' exclusivity period. *See* Appellant's Record on Appeal 44, page 7, lines 9–17.

---

**2.** The Debtors' First Amended Plan of Reorganization provided for the payment of First Fidelity's claim over a ten-year period with a final balloon payment due upon maturity, and for the payment of the unsecured creditors' claims over five years without interest. *See* Appellant's Record on Appeal 14, at pp. 27–30.

**3.** *Cf. Matter of Mother Hubbard, Inc.,* 152 B.R. 189, 195–96 and n. 15 (Bankr.W.D.Mich.1993) (treating of "creditor democracy").

Applying the standards accepted for a showing of "cause" to justify termination of a debtor's exclusivity period under 11 U.S.C. § 1121(d) to the instant case, this Court finds that the Bankruptcy Court erred in its legal conclusion that "cause" existed to terminate the Debtors' exclusivity period.

This Court is not satisfied that statements made by creditors and parties in interest that they were prepared to offer more favorable plans if the court were to terminate the exclusivity period constitutes sufficient cause to cut short the debtor's window of opportunity opened by Congress 11 U.S.C. § 1121(b) and (c). Likewise, the Court is not satisfied that the Bankruptcy Court's view that creditors' interests are paramount in Chapter 11—at least during the exclusivity period—comports with Congressional intent. *See* discussion, *supra.* Further, the Court cannot conclude, based on reasoning of the Bankruptcy cases treating of "cause" under 11 U.S.C. § 1121(d) (discussed *supra* ), that the fact that one creditor constituency is not happy with the debtor's plan constitutes cause to undermine the debtor's chances of winning final confirmation of its plan during the exclusivity period.[4]

While the aim of expediting the process of reorganization is commendable, and the prospect of not getting confirmation of debtor's plan might make the potential for other plans appear inviting, this Court is not satisfied that such justifications rise to the level of "cause" for terminating the debtor's exclusivity period. Congress did indeed contemplate the discourse among debtors, creditor constituencies, and parties in interest which the existence of multiple plans can generate. But early termination of the statutorily prescribed period during which the debtor has the sole right to file a plan of reorganization is not the proper manner, absent a showing of sufficient cause, to facilitate such discourse.

The Debtors in the instant case were, as the record indicates, proceeding in good faith to solicit support for their timely plan of reorganization as of April 4, 1995. The Bankruptcy Code affords them an exclusive right to do so for a period of one hundred and eighty days (180) which, absent "cause," ought not be cut short. As set forth above, sufficient "cause" to terminate the exclusivity period was not presented to the Bankruptcy Court in the instant case and, therefore, the Bankruptcy Judge erred as a matter of law in terminating the exclusivity period. On that issue, the April 4, 1995 and April 18, 1995 Orders by the Bankruptcy Judge must be reversed.

■ In light of the fact that this Court has found that "cause" did not exist to terminate the Debtors' exclusivity period, the Court shall order a reinstatement of the exclusivity period. Because the Debtors have lost the benefit of the exclusivity period from April 4, 1995 to the date of entry of this Letter Opinion and Order, the Court shall Order that the Debtors' exclusivity period shall be deemed to have been stayed during the pendency of this appeal. The Court shall thus Order that the Debtors' exclusivity period shall run from this date forward for a period of time equal to that remaining to the Debtors as of April 4, 1995, had it not been terminated.

The Court shall affirm the Bankruptcy Court's denial of the Debtors' motion for an extension of their exclusivity period. That determination was a discretionary one by the Bankruptcy Judge and, based on the record, was a proper application of law to her factual conclusions.

**Conclusion**

The Bankruptcy Court's determination is affirmed in part and reversed in part. The Bankruptcy Judge's denial of appellants/Debtors' motion to extend the exclusivity period is **AFFIRMED,** and the grant of appellee/First Fidelity's motion to terminate the exclusivity period is **REVERSED.** Ap-

---

4. The only case found by this Court suggesting that dissatisfaction among the creditor constituencies might authorize termination of the exclusivity period, *In re Kun, supra,* is inapposite. In *In re Kun,* the exclusivity period had run and a trustee had been appointed (*see* 11 U.S.C.

§ 1121(c)(1)) before the debtor sought an extension of the exclusivity period. That being the scenario, the court declined to extend the exclusivity period and permitted the filing of alternative plans. 15 B.R. at 853.

pellee/First Fidelity's motion to supplement the record on appeal is **DENIED.**

An appropriate Order accompanies this Letter Opinion.

### *ORDER*

**THIS MATTER** having come before the Court on appellants Geriatrics Nursing Home, Inc.'s and North Jersey Nursing Home, Inc.'s ("the Debtors") appeal of the Bankruptcy Court's April 4, 1995 denial of their motion to extend their 11 U.S.C. § 1121 exclusivity period and the Bankruptcy Court's grant of appellee First Fidelity Bank, N.A.'s motion to terminate the exclusivity period and the Bankruptcy Court's April 18, 1995 denial of appellants' motion for reconsideration, and on appellee's motion to supplement the record on appeal; and the Court having reviewed the submissions of the parties and having heard argument on the appeal and the motion to supplement the record; and for good cause shown as set forth in the accompanying Letter Opinion,

**IT IS** on this 14th day of September, 1995,

**ORDERED** that appellee's motion to supplement the record be and the same hereby is **DENIED;** and it is further

**ORDERED** that the Bankruptcy Court's April 4, 1995 denial of the Debtors' motion to extend their 11 U.S.C. § 1121 exclusivity period and April 18, 1995 denial of the Debtors' motion for reconsideration of that ruling be and the same hereby is **AFFIRMED;** and it is further

**ORDERED** that the Bankruptcy Court's grant of appellee First Fidelity Bank, N.A.'s motion to terminate the exclusivity period and the Bankruptcy Court's April 18, 1995 denial of the Debtors' motion for reconsideration thereof be and the same hereby is **REVERSED;** and it is further

**ORDERED** that the Debtors' exclusivity period as contemplated by 11 U.S.C. § 1121 be deemed **TOLLED** during the pendency of the Debtors' motion for reconsideration and appeal; and it is further

**ORDERED** that the Debtors' exclusivity period as contemplated by 11 U.S.C. § 1121 be **REINSTATED** and henceforth continue

for a period of time equal to that remaining them as of April 4, 1995.